UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KRISTI DAWN DAVIS,

     Plaintiff,

v.                            Case No.:  6:21-cv-2067-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

### **OPINION AND ORDER**

Plaintiff Kristi Dawn Davis seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions. Plaintiff also filed a Supplemental Memorandum in Reply. As explained below, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I. **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

A. **Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

B. **Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C.     Procedural History

Plaintiff filed an application for a period of disability and disability insurance on November 30, 2017, alleging disability beginning on April 15, 2016. (Tr. 74, 251-57). The applications were denied initially and on reconsideration. (Tr. 74, 94). Plaintiff requested a hearing, and on April 6, 2021, a hearing was held before Administrative Law Judge John Loughlin ("ALJ"). (Tr. 38-73). On June 9, 2021, the ALJ entered a decision finding Plaintiff not under a disability from April 15, 2016, through the date last insured of September 30, 2020. (Tr. 16-31).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on November 2, 2021. (Tr. 1-5). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on December 9, 2021, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 18).

### D.     Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2020. (Tr. 19). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of April 15, 2016, through her date last insured of September 30, 2020. (Tr. 19). At step two, the ALJ found that through the date last insured as well as the date of the decision, Plaintiff

had the following severe impairments: "degenerative disc disease of the cervical, thoracic, and lumbar spine with lumbar facet arthropathy; bilateral mastoiditis; bilateral hearing loss, moderate on the right side and mild on the left side; neuropathy; obesity." (Tr. 19). At step three, the ALJ found that through the date last insured as well as the date of the decision, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 22-23).

Before proceeding to step four, the ALJ found Plaintiff had the following RFC:

> After careful consideration of the entire record, I find that, through the date last insured, as well as the date of this decision, the claimant had the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except she can occasionally balance on uneven surfaces, can occasionally stoop, kneel, crouch, or crawl, can occasionally climb stairs or ramps, can occasionally climb ladders, ropes or scaffolds, can occasionally be exposed to vibrations, unprotected heights or moving machinery parts, and requires a moderate noise work environment, as defined in the DOT and the SCO.

(Tr. 24).

At step four, the ALJ relied on the vocational expert's testimony to find that through the date last insured as well as the date of the decision, Plaintiff was capable of performing her past relevant work as a recreation supervisor. (Tr. 29). The ALJ determined that this work did not require the performance of work-related activities

precluded by Plaintiff's RFC. Alternatively, at step five the ALJ considered Plaintiff's age (45 years old on the date last insured), education (at least high school), work experience, and RFC, and found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 29-30). Specifically, the vocational expert found that Plaintiff could perform such occupations as:

     (1)   office helper, DOT 239.567-010,[1] light, unskilled, SVP 2

     (2)   marker, DOT 209.587-034, light, unskilled, SVP 2

     (3)   router, DOT 222.587-038, light, unskilled, SVP 2

(Tr. 30). The ALJ concluded that Plaintiff had not been under a disability from April 15, 2016, the alleged onset date, through September 30, 2020, the date last insured. (Tr. 30).

## II.   Analysis

On appeal, Plaintiff raises the issue of whether the ALJ adequately considered the clinical findings and explanations offered by Kristine Everding, M.D. when evaluating her opinions under the new regulations. (Doc. 22, p. 16, 18). Plaintiff also argues that by failing to provide an adequate rationale that addresses all of Dr. Everding's reasons, the ALJ erred as a matter of law. (Doc. 22, p. 18; Doc. 29, p. 1-2).

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

The regulations for disability cases filed after March 27, 2017 – such as this one – changed and an ALJ no longer defers or gives any specific evidentiary weight to a medical opinion. 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a). Thus, an ALJ no longer uses the term "treating source" and does not defer or give specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

Instead, an ALJ assesses the persuasiveness of a medical source's opinions given the following five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 416.920c(a)-(c). An ALJ may but is not required to explain how he considers factors other than supportability and consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to

support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. §§ 404.1513(a)(2)-(3), 416.913(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

In the decision, the ALJ considered Dr. Everding's examination records and the three opinion questionnaires she completed, a Medical Questionnaire for Hand

Pain, a Fibromyalgia Questionnaire, and a general Medical Questionnaire. (Tr. 546-47, 548-51, 552-54). The ALJ found all of Dr. Everding's opinions generally unpersuasive:

> I find the following opinions submitted by Dr. Everding unpersuasive, notwithstanding the ostensible support derived from her history of examining and treating the claimant, because her conclusions are inconsistent with her examination findings and those of other clinical providers in the record (20 [C.F.R. §] 404.1520(c)(1 and 2)) (30E; 14F; 15F; 16F). Furthermore, with respect to all of Dr. Everding's opinions, I note that she has not examined or treated the claimant since August 2019, a lapse of nearly two years, which further reduces the relevance of her opinions and the supportive value of her examinations (Hearing Testimony; 30E).

(Tr. 27).

Beginning with the April 2020 questionnaire on hand pain, Dr. Everding found Plaintiff had diminished grip strength and limited Plaintiff to frequently gripping, grasping, and handling objects. (Tr. 546). Dr. Everding also found Plaintiff would have difficulty with moving fingers, manual dexterity, and bilateral manual dexterity, and limited Plaintiff to frequently for these activities. (Tr. 546). She limited Plaintiff to frequently carrying 5 pounds and occasionally carrying 15 pounds. (Tr. 547). Dr. Everding found Plaintiff would have difficulty concentrating, focusing, and following and remembering instructions due to pain. (Tr. 547). She found the limitations present as of 2016, and found that Plaintiff had diminished dexterity in both hands and should avoid repetitive heavy lifting as well as being unable to handle small items due to loss of bilateral manual dexterity. (Tr. 547). Dr.

Everding cited the objective evidence of MRI, CAT scans, x-ray, and past nerve conduction tests. (Tr. 547).

The ALJ found Dr. Everding's hand questionnaire unsupported by her own findings:

> The hand questionnaire completed at the representative's request is inconsistent with Dr. Everding's own findings, which include normal motor strength, normal movement, and grossly intact sensation, and no specific notations about hand problems until March 2019 (8F/4, 12; 11F/6, 9; 17F). With respect to the March 2019 report, nothing in the treatment notes indicates that Dr. Everding actually measured the claimant's grip strength with objective instrumentation, such as a dynamometer, rendering her assessment of weak grip strength vague and unsupported (17F). Furthermore, Dr. Everding failed to furnish a medical basis, such as an intervening injury, that could account for the deviation from her prior examinations or the discrepancy versus the consultative physician's observation of 5/5 motor strength and fully functional hands only one month prior (8F; 11F; 13F/3). Such inconsistent, vague, unsupported, and subjectively-based findings do not support the overly conservative lifting restrictions, total preclusion of pushing and pulling, and limited dexterity and gripping ability advanced in Dr. Everding's opinion (20 [C.F.R. §] 404.1520(c)(2)) (14F).

(Tr. 27-28).

Plaintiff argues that it is not enough for the ALJ to mention some normal clinical findings without giving further explanation as to why Dr. Everding's opinion was not persuasive. (Doc. 22, p. 18). Plaintiff asserts that Dr. Everding relied on an MRI, CAT scans, X-rays, and past Nerve Conduction Testing to assess Plaintiff's limitations. (Doc. 22, p. 18). At the same time, Plaintiff acknowledges that during

July 2017, January 2018, and June 2018, Dr. Everding did not find abnormal motor strength or movement in all extremities. (Doc. 22, p. 19, Tr. 482, 490, 525). Plaintiff also cites a note in the July 2017 exam that showed Plaintiff had general tenderness and pain with range of motion in the neck and back and then argues this record support Dr. Everding's limitations as to hands. (Doc. 22, p. 19). But in that same record, Dr. Everding also found Plaintiff had normal motor strength and normal movement of all extremities. (Doc. 22, p. 19; Tr. 490). The ALJ found this inconsistency telling. Further, while Plaintiff may have had neck and back pain, these records do not reflect that this pain affected Plaintiff's hands at that time.[2]

Plaintiff further claims that the ALJ erred in stating that there were "no specific notions about hand problems until March 2019." (Doc. 20, p. 22; Doc. 29, p. 2-3; Tr. 27). Plaintiff cites a 2015 neurological examination, Dr. Everding's July 2017 examination that noted tenderness and pain with range of motion in the neck, and a June 2018 report of back and neck pain. (Doc. 22, p. 20-21). As stated above, the July 2017 and June 2018 examinations of back and neck pain do not support hand limitations without more explanation. And one mention in 2015 report of hand

---

[2] Plaintiff also argues that the ALJ incorrectly determined that Dr. Everding did not measure Plaintiff's grip strength appropriately because she did not use objective instrumentation, such as a dynamometer. (Doc. 22, p. 20; Tr. 27). Even if the ALJ's statement is incorrect on this testing, the Court relies on the ALJ's other reasons to find Dr. Everding's opinions unpersuasive.

numbness does not contradict the ALJ's overall finding that Plaintiff generally reported no hand problems until March 2019.

Plaintiff also argues that even if the ALJ found no other support in the record for the restrictions on lifting and handling objects until March 2019, this March 2019 record alone would be an insufficient rational to find Dr. Everding's opinion unpersuasive. (Doc. 22, p. 21). But the ALJ found other support in the record to discount the March 2019 examination report. In February 2019 – one month prior to Dr. Everding's March 2019 examination – Martha Pollock, M.D. conducted a consultative examination. (Tr. 27; Tr. 538-40). Dr. Pollock found Plaintiff had the full use of her hands and had full motor strength. (Tr. 539).[3] The ALJ noted that Dr. Everding failed to furnish a medical basis to account for the deviation between Dr. Pollock's February 2019 examination findings and her March 2019 examination findings on Plaintiff's use of her hands. (Tr. 27). As to Dr. Everding's hand questionnaire, substantial evidence supports the ALJ's findings that Dr. Everding's opinion was unpersuasive because it was unsupported by her examination findings and inconsistent with other medical evidence of record, and the ALJ applied the correct legal standard to this opinion.

---

[3] The ALJ found Dr. Pollock's findings persuasive, but noted that she omitted any discussion of functional limitations and found her medical findings did not constitute a medical opinion under the regulations. (Tr. 27).

As for the general medical questionnaire, the ALJ found it similarly inconsistent and unpersuasive:

> Dr. Everding continued with similarly inconsistent and unpersuasive remarks in a medical questionnaire submitted by the representative at exhibit 15F, assessing the same sedentary lifting limitations along with sub-sedentary sitting, standing, walking, and manipulative limitations (15F/1-2). Paradoxically, Dr. Everding's opinion allowed for occasional postural movements, which, in Social Security parlance, could result in a greater tolerance for strenuous activities like climbing and crawling than basic sitting, standing, and walking (15F/2). Finally, this opinion projected four or more days of absenteeism per month. Such limitations are inconsistent with the overall record of treatment, which does not contain a significant number of unscheduled or urgent medical appointments or symptoms consistent with such sedentary exertional limitations, highly restrictive upper extremity limitations, and disabling absenteeism (20 [C.F.R. §] 404.1520c(c)(2)) (6F/3; 8F/2, 6; 11F/6-7; 13F/3; 17F/3; 18F/6; 20F/4; 22F/4).

(Tr. 28).

Plaintiff argues that the April 20, 2020, general medical questionnaire contains Dr. Everding's diagnosis for Plaintiff of fatigue, spinal injuries, nerve impingements, dexterity loss, and degenerative disc disease, all of which were not addressed by the ALJ when considering Dr. Everding's opinion. (Doc. 22, p. 22). Plaintiff claims that Dr. Everding supported the standing, walking, and sitting limitations by her diagnosis of nerve impingement, chronic pain, degenerative disc disease, spinal stenosis, arthritis of facet of the spine, and fibromyalgia. (Doc. 22, p. 22). Plaintiff points to some instances of positive straight leg raise tests, general

tenderness and pain with range of motion in the back, fatigue, cognitive difficulties, fibromyalgia, anxiety, depression, migraines, Barrett's disease, and lymphocytic colitis. (Doc. 22, p. 22).

For many of the same reasons the ALJ found Dr. Everding's opinion on Plaintiff's hand limitations unpersuasive so too did he find Dr. Everding's extreme limitations in the general medical questionnaire unpersuasive. While Plaintiff points to a few positive leg raise tests, the ALJ noted that Dr. Everding's opinion is unsupported by the record, which contains other negative straight leg raising tests, and full lower extremity strength, and sensation. (Tr. 25, 26, 27, 484, 525, 539). Further, Dr. Everding's March 2019 treatment notes contained the more severe of Dr. Everding's examination findings on hand-grip strength and tenderness in the upper and lower back, but as the ALJ noted, these findings were inconsistent with and unsupported by those of Dr. Pollock who conducted an examination just one month before, and Dr. Everding failed to explain the reasons for these new limitations. (Tr. 557-558; 539-40). In addition, Dr. Everding claims that these limitations were present from 2016, but her medical records from that time period fail to support this statement. (Tr. 551). Substantial evidence supports the ALJ's finding that Dr. Everding's opinion in the general medical questionnaire is unsupported by her own records and inconsistent with the medical and other

evidence of record and therefore unpersuasive. The ALJ applied the correct legal standard when reviewing Dr. Everding's opinions.

In the Reply, Plaintiff argues that the ALJ erred in finding that there was a "lapse of nearly two years" since Dr. Everding treated Plaintiff. (Doc. 29, p. 5). Plaintiff claims that Dr. Everding left Steward Medical in August 2019, and her April 2020 opinions were given 8 months, not two years later. (Doc. 29, p. 5). The ALJ found, "[f]urthermore, with respect to all of Dr. Everding's opinions, I note that she has not examined or treated the claimant since August 2019, a lapse of nearly two years, which further reduces the relevance of her opinions and the supportive value of her examinations (Hearing Testimony; 30E)." (Tr. 27). It appears that Dr. Everding last treated Plaintiff in August 2019, and the ALJ's decided the matter in June 2021, a lapse of nearly two years. In any event, this statement was not the primary reason the ALJ found Dr. Everding's opinions unpersuasive.

Moreover, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). Even if the evidence preponderates against the Commissioner's decision, the Court must affirm if substantial evidence supports the Commissioner's decision. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). Here, the ALJ's decision is supported by substantial evidence and he applied the correct legal standard.

### III.    Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on February 17, 2023.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties